1 **WO**

2

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7 FOR THE DISTRICT OF ARIZONA

8

9 Michael Wilson,                                )   No. CV 11-00546-PHX-FJM
                                                 )
10          Plaintiff,                           )   **ORDER**
                                                 )
11 vs.                                           )
                                                 )
12                                               )
   GMAC Mortgage, LLC, fka GMAC                  )
13 Mortgage Corporation; Homecomings             )
   Financial, LLC; Does 1 to 50,                 )
14                                               )
            Defendants.                          )
15                                               )
                                                 )
16

17

18          The court has before it defendants GMAC Mortgage's and Homecomings Financial's

19 partial motion to dismiss pursuant to Rule 12(b)(6) and Rule 9(b), Fed. R. Civ. P., (doc. 33),

20 plaintiff's response (doc. 38), and defendants' reply (doc. 43).

21          Plaintiff purchased a home in October 2006, taking out a mortgage serviced by the

22 defendants.  Sometime in 2009 plaintiff fell behind on his mortgage payments, prompting

23 plaintiff in October 2009 to seek a loan modification with defendants.  During the ensuing

24 months, defendants requested and plaintiff provided financial paperwork. Before defendants

25 rendered a decision on the loan modification request, the note on plaintiff's home was

26 purchased at a trustee foreclosure sale on April 1, 2010.  A few days later, plaintiff received

27 a letter from defendants dated April 5, 2010 denying plaintiff's request for a loan

28 modification under the Home Affordable Modification Program (HAMP) due to plaintiff's

1    unpaid principal balance.

2          At the end of April 2010, defendants presented plaintiff with a settlement agreement

3    that he had twenty-four hours to sign.  The agreement, if executed, would reinstate the loan

4    on plaintiff's home provided that plaintiff pay $45,271.51, including $42,947.20 in payments,

5    accrued late charges, and fees.  Plaintiff alleges that defendants could not explain what the

6    accrued fees and charges were, or provide an accounting for the payments due.  The terms

7    of the settlement agreement state that defendants would "[r]eaffirm the subject loan and enter

8    into a loan modification with Borrower the terms of which are attached hereto as Exhibit A

9    and incorporated herewith."[1]  Compl., Ex. C.  Plaintiff and defendant signed the agreement

10   and plaintiff paid the full amount requested.

11         Although defendants reinstated plaintiff's mortgage and restored title to plaintiff's

12   name, defendants have not provided a loan modification.  Instead, defendants have told

13   plaintiff he must submit an entirely new application to be considered for a modification.

14         Plaintiff originally filed this action in the Superior Court of Arizona in Maricopa

15   County.  Defendants removed the action on the basis of diversity jurisdiction.  Upon

16   stipulation by the parties, plaintiff filed a First Amended Complaint ("FAC") on June 29,

17   2011 (doc. 27). The FAC seeks specific performance and damages for the following claims:

18   (1) actual fraud, (2) constructive fraud, (3) breach of contract, (4) intentional infliction of

19   emotional distress, (5) negligence, (6) deceptive practices in violation of A.R.S. § 44-1521,

20   and (7) unjust enrichment.  Defendants move to dismiss claims one, two, four, five, and six.

21                                              **I.**

22         Plaintiff initially argues that this motion is untimely because it was made after a

23   responsive pleading filed by defendants.  A Rule 12(b) motion must be filed prior to a

24   responsive pleading.  Fed. R. Civ. P. 12(b).  Defendants did file an answer prior to the

25   pending motion (doc. 6), however this answer was in response to plaintiff's initial complaint.

26

27         [1] No document titled "Exhibit A" was provided to this court as a part of the settlement
     agreement, and plaintiff does not allege receipt of a document labeled "Exhibit A" in the
28   FAC.

1   The instant motion to dismiss the FAC was filed by defendant prior to its responsive pleading

2   to the FAC, and is therefore timely.

3                                           **II.**

4          We turn to the substantive claims.  Plaintiff alleges three separate claims of fraud.

5   Claim one in essence alleges that defendants committed actual fraud by extending the loan

6   modification application process (thus giving plaintiff the impression that he was being

7   approved), and falsely representing to plaintiff in the settlement agreement that defendants

8   would enter into a loan modification in order to secure plaintiff's signature and payment of

9   $45,271.51.  In claim two for constructive fraud, plaintiff alleges that defendants owed

10  plaintiff a fiduciary duty and breached this relationship by failing to adhere to the terms of

11  the settlement agreement.  Finally, claim six alleges that defendants knowingly engaged in

12  deceptive practices in violation of A.R.S. § 44-1521 by foreclosing on plaintiff's home after

13  denying his loan modification application in an untimely manner, inducing plaintiff into

14  thinking he would receive a modification, and demanding payment in exchange for an

15  unfulfilled promise to provide a loan modification.  Defendants first move to dismiss the

16  fraud claims (one, two, and six), arguing that they are barred by the economic loss doctrine.

17  Alternatively, defendants move to dismiss the fraud claims under Rule 9(b), Fed. R. Civ P.

18  We address each of these arguments in turn.

19         Defendants first argue that plaintiff's fraud claims are barred by the economic loss

20  doctrine because plaintiff seeks recovery of economic loss only.  The economic loss doctrine,

21  when applicable, acts to limit a party to contractual remedies for economic losses absent

22  physical injury to people or other property.  Flagstaff Affordable Hous. Ltd. P'ship v. Design

23  Alliance, Inc., 223 Ariz. 320, 323, 223 P.3d 664, 667 (2010).  The doctrine is designed to

24  honor parties' expectations by limiting recovery to contract remedies "for loss of the benefit

25  of the bargain."  Id. at 327, 671.  Holding contractual parties to agreed-upon remedies is

26  appropriate when, as contract law presumes is the case, parties are on equal footing and have

27  had an opportunity during negotiations to allocate risks.  KD & KD Enterprises, LLC v.

28  Touch Automation, LLC, No. CV-06-2083-PHX-FJM, 2006 WL 3808257, at *2 (D. Ariz.

1   Dec. 27, 2006); see also Flagstaff, 223 Ariz. at 325, 223 P.3d at 669 (noting that contract law

2   encourages parties to allocate risk of future loss and enforce agreements consistent with

3   parties' expectations).

4          A formulation of the economic loss doctrine that eliminates recovery under all tort

5   theories, however, is "overly broad." Id. at 323, 223 P.3d at 667.  And in the case of fraud,

6   a tort specifically designed to remedy economic harm, the doctrine is especially

7   inappropriate.  When fraudulent conduct infects contract negotiations, the presumption that

8   the parties engaged in an equal negotiation evaporates.  Thus, it is unreasonable to restrict

9   a party to contractual liability when fraud created an unequal bargaining environment. KD

10  & KD Enterprises, at *2. See also Giles v. General Motors Acceptance Corp., 494 F.3d 865,

11  880 (9th Cir. 2007) (holding that Nevada's economic loss doctrine did not bar a claim that

12  defendant fraudulently misrepresented facts to induce plaintiff into signing a contract).

13  Because fraud creates only economic damages, applying the economic loss doctrine to fraud

14  claims would eliminate this tort.  KD & KD Enterprises, at *1.  To do so would release a

15  party from liability for even intentionally fraudulent behavior. Id. at *3.  We decline to do

16  so.

17         Alternatively, defendants contend that plaintiff has not pled his claims of fraud with

18  the required particularity.   When alleging claims of fraud, a party "must state with

19  particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This

20  heightened pleading standard applies to claims of statutory fraud as well as common law

21  fraud. Williamson v. Allstate Ins. Co., 204 F.R.D. 641, 644 (D. Ariz. 2001).  Allegations of

22  fraud must be specific enough to give defendants notice of specific misconduct, including

23  the "who, what, when, where, and how" of the challenged conduct. Vess v. Ciba-Geigy

24  Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616,

25  627 (9th Cir. 1997)).  When an action involves multiple defendants, a plaintiff cannot simply

26  "lump multiple defendants together," but must at a minimum identify each defendant's role

27  in the alleged fraud. Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).

28

1   In Swartz, the Ninth Circuit found that plaintiff's fraud claims "patently fail[ed] to

2   comply with Rule 9(b)" because they included only general averments that "'defendants'

3   engaged in fraudulent conduct." Id. at 765.  Plaintiff's fraud claims suffer the same defect.

4   Although plaintiff includes allegations outlining various events and misrepresentations made

5   to plaintiff leading up to the signing of the settlement agreement, it is impossible to tell

6   whether the fraudulent conduct plaintiff complains of was committed by GMAC Mortgage,

7   Homecomings Financial, or both.  Plaintiff's lumping together of the "defendants" fails to

8   meet the minimum pleading requirements for fraud claims involving multiple defendants.

9   We therefore dismiss claims one, two, and six.

## III.

11   We next consider plaintiff's fifth claim alleging negligence.  Plaintiff claims that

12   defendants owed a duty of care as fiduciaries and to act as reasonable mortgage companies

13   should throughout all interactions with plaintiff.  Defendants were negligent, according to

14   plaintiff, when they demanded $45,271.51 as part of the settlement agreement after denying

15   plaintiff's loan application after five months, and failed to honor their obligation under the

16   agreement to provide a loan modification.  Defendants first argue that the negligence claim

17   is barred by the economic loss doctrine because the conduct complained of flows from

18   plaintiff's breach of contract claim.  Plaintiff contends that the doctrine does not bar his claim

19   because defendants' duties of care arose independent of the contract.

20   

21   Plaintiff's allegation that defendants breached a duty by failing to provide a loan

22   modification as promised is essentially a recitation of the breach of contract claim.  Plaintiff

23   does not allege that defendants had an independent duty to provide a loan modification.

24   Instead, plaintiff claims that defendants' failure to adhere to their promise in the settlement

25   agreement to provide a loan modification amounts to a breach of duty.  Whether a person

26   breaches a contract willingly or negligently, however, is irrelevant: negligently failing to

27   honor a contract is still breach of contract.  See Dan B. Dobbs, An Introduction to Non-

28   Statutory Economic Loss Claims, 48 Ariz. L. Rev. 713, 723 (2006).  Thus, because plaintiff

1   does not allege physical injury to person or property as the result of defendants' failure to

2   provide a loan modification in accordance with the settlement agreement, the economic loss

3   doctrine bars this portion of plaintiff's claim. Flagstaff, 223 Ariz. at 323, 223 P.3d at 667.

4   To the extent that plaintiff alleges negligence as the result of defendant's failure to provide

5   a loan modification, we dismiss claim five.

6        Plaintiff's remaining allegations of negligence, however, concern a duty of defendants

7   that plaintiff claims is owed him independent of the settlement agreement.   This is

8   defendants' alleged duty to act as a fiduciary and as a reasonable mortgage service company

9   would act "throughout all interactions" with plaintiff. Compl. at 13.  This duty was breached

10  according to plaintiff when defendants denied the original loan modification application after

11  a five-month process, apparently as part of the alleged attempt to have plaintiff sign the

12  settlement agreement.  The conduct complained of in these allegations - a breach of a duty

13  of care arising from the relationship between the parties - exists independent of the settlement

14  agreement and therefore is not categorically barred by the economic loss doctrine.

15        Next we consider whether plaintiff has adequately pled facts amounting to a

16  negligence claim.  To succeed on a negligence claim in Arizona, a plaintiff must prove (1)

17  defendant had a duty to conform to a prescribed standard of care, (2) defendant breached that

18  standard, (3) there was a causal connection between the conduct and the injury, and (4) actual

19  damage. Gipson v. Kasey, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007).  Whether a duty

20  of care exists is a matter of law for the court to determine. Id. Unless a "special relationship"

21  arises from extensive involvement in a lender's business, a lender of money owes no duty of

22  care to a borrower when the lender's participation in the loan is limited to a "mere lender of

23  money." Narramore v. HSBC Bank USA, N.A., No. 09-CV-635-TUC-CKJ, 2010 WL

24  2732815, at *8 (D. Ariz. July 7, 2010).  Some traditional borrower-lender relationships may

25  include a duty to disclose.  This duty, however, is "very narrow" and is limited "only to the

26  duty to disclose." Id. Here, plaintiff's mere allegation that defendants' role in the loan

27  modification application process went beyond a superficial business transaction and created

28

1    something beyond a traditional borrower-lender relationship is unpersuasive.  Indeed,

2    plaintiff's allegations describing the HAMP loan modification program as addressing the

3    "crisis taking place across the United States" and his allegations that the failure of banks to

4    agree to appropriate loan modifications is so rampant that the topic has been discussed before

5    Congress suggests that plaintiff's interaction with defendants throughout the loan

6    modification application process was routine rather than remarkable.  Because plaintiff has

7    failed to plead plausible facts that a duty existed between plaintiff borrower and his

8    defendant lenders, his negligence claim fails as a matter of law.  We therefore dismiss claim

9    five.

10                                                    **IV.**

11        Finally, we address plaintiff's fourth claim alleging intentional infliction of emotional

12   distress (IIED).  Plaintiff alleges that defendants' intentional delay of the loan modification

13   application process, the rejection of his application four days after foreclosure on his home

14   and five months after the application process started, and defendants' refusal to honor their

15   obligations in the settlement agreement is extreme and outrageous conduct that resulted in

16   severe emotional distress.  Defendant moves to dismiss the IIED claim either for failure to

17   state a claim or as barred by the economic loss doctrine.

18        In order for a party to prevail on an IIED claim in Arizona, the conduct complained

19   of must be extreme and outrageous.  Watts v. Golden Age Nursing Home, 127 Ariz. 255,

20   258, 619 P.2d 1032, 1035 (1980).  Conduct must be "so extreme in degree," and so beyond

21   boundaries of decency, that it is considered "atrocious, and utterly intolerable in a civilized

22   community."  Restatement (Second) of Torts § 46 cmt. d (1965).  When considering a motion

23   to dismiss an IIED claim, we may determine whether the alleged actions rise to this level.

24   Cervantes v. Countrywide Home Loans, Inc., ___ F.3d ___, No. 09-17364, 2011 WL

25   3911031, at *9 (9th Cir. Sept. 7, 2011).

26

27        The Ninth Circuit in Cervantes considered a claim that defendants committed IIED

28   by targeting vulnerable homeowner plaintiffs for loans that defendants knew plaintiffs could

1  not afford.  Id. The court upheld the district court's dismissal of the claim, noting that the

2  alleged conduct, even if offensive, was "not inherently 'extreme and outrageous'."  Id.

3  Similarly, intentional delay of a loan modification application for five months, foreclosure

4  on a home for which plaintiff was in default, rejection of a loan modification application, and

5  breaching a contractual provision, although arguably offensive, is not utterly intolerable and

6  beyond all bounds of decency.  We dismiss claim four, and as such do not consider

7  defendant's alternative argument that the IIED claim is barred by the economic loss doctrine.

8  **V.**

9  **THEREFORE, IT IS ORDERED GRANTING** defendants' motion to dismiss

10 claims one, two, four, five, and six (doc. 33).

11 DATED this 13th day of September, 2011.

12

13

14 *Frederick J. Martone*
   _____
15 Frederick J. Martone
   United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -