**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Wilson, ) | No. CV 11-00546-PHX-FJM |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| GMAC Mortgage, LLC, fka GMAC Mortgage Corporation; Homecomings Financial, LLC; Does 1 to 50, ) | |
| Defendants. ) | |

The court has before it defendants GMAC Mortgage's and Homecomings Financial's partial motion to dismiss pursuant to Rule 12(b)(6) and Rule 9(b), Fed. R. Civ. P., (doc. 33), plaintiff's response (doc. 38), and defendants' reply (doc. 43).

Plaintiff purchased a home in October 2006, taking out a mortgage serviced by the defendants. Sometime in 2009 plaintiff fell behind on his mortgage payments, prompting plaintiff in October 2009 to seek a loan modification with defendants. During the ensuing months, defendants requested and plaintiff provided financial paperwork. Before defendants rendered a decision on the loan modification request, the note on plaintiff's home was purchased at a trustee foreclosure sale on April 1, 2010. A few days later, plaintiff received a letter from defendants dated April 5, 2010 denying plaintiff's request for a loan modification under the Home Affordable Modification Program (HAMP) due to plaintiff's

1 unpaid principal balance.

At the end of April 2010, defendants presented plaintiff with a settlement agreement that he had twenty-four hours to sign. The agreement, if executed, would reinstate the loan on plaintiff's home provided that plaintiff pay $45,271.51, including $42,947.20 in payments, accrued late charges, and fees. Plaintiff alleges that defendants could not explain what the accrued fees and charges were, or provide an accounting for the payments due. The terms of the settlement agreement state that defendants would "[r]eaffirm the subject loan and enter into a loan modification with Borrower the terms of which are attached hereto as Exhibit A and incorporated herewith."[1] Compl., Ex. C. Plaintiff and defendant signed the agreement and plaintiff paid the full amount requested.

Although defendants reinstated plaintiff's mortgage and restored title to plaintiff's name, defendants have not provided a loan modification. Instead, defendants have told plaintiff he must submit an entirely new application to be considered for a modification.

Plaintiff originally filed this action in the Superior Court of Arizona in Maricopa County. Defendants removed the action on the basis of diversity jurisdiction. Upon stipulation by the parties, plaintiff filed a First Amended Complaint ("FAC") on June 29, 2011 (doc. 27). The FAC seeks specific performance and damages for the following claims: (1) actual fraud, (2) constructive fraud, (3) breach of contract, (4) intentional infliction of emotional distress, (5) negligence, (6) deceptive practices in violation of A.R.S. § 44-1521, and (7) unjust enrichment. Defendants move to dismiss claims one, two, four, five, and six.

**I.**

Plaintiff initially argues that this motion is untimely because it was made after a responsive pleading filed by defendants. A Rule 12(b) motion must be filed prior to a responsive pleading. Fed. R. Civ. P. 12(b). Defendants did file an answer prior to the pending motion (doc. 6), however this answer was in response to plaintiff's <u>initial</u> complaint.

---

[1] No document titled "Exhibit A" was provided to this court as a part of the settlement agreement, and plaintiff does not allege receipt of a document labeled "Exhibit A" in the FAC.

The instant motion to dismiss the FAC was filed by defendant prior to its responsive pleading to the FAC, and is therefore timely.

**II.**

We turn to the substantive claims. Plaintiff alleges three separate claims of fraud. Claim one in essence alleges that defendants committed actual fraud by extending the loan modification application process (thus giving plaintiff the impression that he was being approved), and falsely representing to plaintiff in the settlement agreement that defendants would enter into a loan modification in order to secure plaintiff's signature and payment of $45,271.51. In claim two for constructive fraud, plaintiff alleges that defendants owed plaintiff a fiduciary duty and breached this relationship by failing to adhere to the terms of the settlement agreement. Finally, claim six alleges that defendants knowingly engaged in deceptive practices in violation of A.R.S. § 44-1521 by foreclosing on plaintiff's home after denying his loan modification application in an untimely manner, inducing plaintiff into thinking he would receive a modification, and demanding payment in exchange for an unfulfilled promise to provide a loan modification. Defendants first move to dismiss the fraud claims (one, two, and six), arguing that they are barred by the economic loss doctrine. Alternatively, defendants move to dismiss the fraud claims under Rule 9(b), Fed. R. Civ P. We address each of these arguments in turn.

Defendants first argue that plaintiff's fraud claims are barred by the economic loss doctrine because plaintiff seeks recovery of economic loss only. The economic loss doctrine, when applicable, acts to limit a party to contractual remedies for economic losses absent physical injury to people or other property. Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc., 223 Ariz. 320, 323, 223 P.3d 664, 667 (2010). The doctrine is designed to honor parties' expectations by limiting recovery to contract remedies "for loss of the benefit of the bargain." Id. at 327, 671. Holding contractual parties to agreed-upon remedies is appropriate when, as contract law presumes is the case, parties are on equal footing and have had an opportunity during negotiations to allocate risks. KD & KD Enterprises, LLC v. Touch Automation, LLC, No. CV-06-2083-PHX-FJM, 2006 WL 3808257, at *2 (D. Ariz.

Dec. 27, 2006); see also Flagstaff, 223 Ariz. at 325, 223 P.3d at 669 (noting that contract law encourages parties to allocate risk of future loss and enforce agreements consistent with parties' expectations).

A formulation of the economic loss doctrine that eliminates recovery under all tort theories, however, is "overly broad." Id. at 323, 223 P.3d at 667. And in the case of fraud, a tort specifically designed to remedy economic harm, the doctrine is especially inappropriate. When fraudulent conduct infects contract negotiations, the presumption that the parties engaged in an equal negotiation evaporates. Thus, it is unreasonable to restrict a party to contractual liability when fraud created an unequal bargaining environment. KD & KD Enterprises, at *2. See also Giles v. General Motors Acceptance Corp., 494 F.3d 865, 880 (9th Cir. 2007) (holding that Nevada's economic loss doctrine did not bar a claim that defendant fraudulently misrepresented facts to induce plaintiff into signing a contract). Because fraud creates only economic damages, applying the economic loss doctrine to fraud claims would eliminate this tort. KD & KD Enterprises, at *1. To do so would release a party from liability for even intentionally fraudulent behavior. Id. at *3. We decline to do so.

Alternatively, defendants contend that plaintiff has not pled his claims of fraud with the required particularity. When alleging claims of fraud, a party "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard applies to claims of statutory fraud as well as common law fraud. Williamson v. Allstate Ins. Co., 204 F.R.D. 641, 644 (D. Ariz. 2001). Allegations of fraud must be specific enough to give defendants notice of specific misconduct, including the "who, what, when, where, and how" of the challenged conduct. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). When an action involves multiple defendants, a plaintiff cannot simply "lump multiple defendants together," but must at a minimum identify each defendant's role in the alleged fraud. Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).

In <u>Swartz</u>, the Ninth Circuit found that plaintiff's fraud claims "patently fail[ed] to comply with Rule 9(b)" because they included only general averments that "'defendants' engaged in fraudulent conduct." <u>Id.</u> at 765. Plaintiff's fraud claims suffer the same defect. Although plaintiff includes allegations outlining various events and misrepresentations made to plaintiff leading up to the signing of the settlement agreement, it is impossible to tell whether the fraudulent conduct plaintiff complains of was committed by GMAC Mortgage, Homecomings Financial, or both. Plaintiff's lumping together of the "defendants" fails to meet the minimum pleading requirements for fraud claims involving multiple defendants. We therefore dismiss claims one, two, and six.

### III.

We next consider plaintiff's fifth claim alleging negligence. Plaintiff claims that defendants owed a duty of care as fiduciaries and to act as reasonable mortgage companies should throughout all interactions with plaintiff. Defendants were negligent, according to plaintiff, when they demanded $45,271.51 as part of the settlement agreement after denying plaintiff's loan application after five months, and failed to honor their obligation under the agreement to provide a loan modification. Defendants first argue that the negligence claim is barred by the economic loss doctrine because the conduct complained of flows from plaintiff's breach of contract claim. Plaintiff contends that the doctrine does not bar his claim because defendants' duties of care arose independent of the contract.

Plaintiff's allegation that defendants breached a duty by failing to provide a loan modification as promised is essentially a recitation of the breach of contract claim. Plaintiff does not allege that defendants had an independent duty to provide a loan modification. Instead, plaintiff claims that defendants' failure to adhere to their promise in the settlement agreement to provide a loan modification amounts to a breach of duty. Whether a person breaches a contract willingly or negligently, however, is irrelevant: negligently failing to honor a contract is still breach of contract. <u>See</u> Dan B. Dobbs, <u>An Introduction to Non-Statutory Economic Loss Claims</u>, 48 Ariz. L. Rev. 713, 723 (2006). Thus, because plaintiff

does not allege physical injury to person or property as the result of defendants' failure to provide a loan modification in accordance with the settlement agreement, the economic loss doctrine bars this portion of plaintiff's claim. Flagstaff, 223 Ariz. at 323, 223 P.3d at 667. To the extent that plaintiff alleges negligence as the result of defendant's failure to provide a loan modification, we dismiss claim five.

Plaintiff's remaining allegations of negligence, however, concern a duty of defendants that plaintiff claims is owed him independent of the settlement agreement. This is defendants' alleged duty to act as a fiduciary and as a reasonable mortgage service company would act "throughout all interactions" with plaintiff. Compl. at 13. This duty was breached according to plaintiff when defendants denied the original loan modification application after a five-month process, apparently as part of the alleged attempt to have plaintiff sign the settlement agreement. The conduct complained of in these allegations - a breach of a duty of care arising from the relationship between the parties - exists independent of the settlement agreement and therefore is not categorically barred by the economic loss doctrine.

Next we consider whether plaintiff has adequately pled facts amounting to a negligence claim. To succeed on a negligence claim in Arizona, a plaintiff must prove (1) defendant had a duty to conform to a prescribed standard of care, (2) defendant breached that standard, (3) there was a causal connection between the conduct and the injury, and (4) actual damage. Gipson v. Kasey, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007). Whether a duty of care exists is a matter of law for the court to determine. Id. Unless a "special relationship" arises from extensive involvement in a lender's business, a lender of money owes no duty of care to a borrower when the lender's participation in the loan is limited to a "mere lender of money." Narramore v. HSBC Bank USA, N.A., No. 09-CV-635-TUC-CKJ, 2010 WL 2732815, at *8 (D. Ariz. July 7, 2010). Some traditional borrower-lender relationships may include a duty to disclose. This duty, however, is "very narrow" and is limited "only to the duty to disclose." Id. Here, plaintiff's mere allegation that defendants' role in the loan modification application process went beyond a superficial business transaction and created

something beyond a traditional borrower-lender relationship is unpersuasive. Indeed, plaintiff's allegations describing the HAMP loan modification program as addressing the "crisis taking place across the United States" and his allegations that the failure of banks to agree to appropriate loan modifications is so rampant that the topic has been discussed before Congress suggests that plaintiff's interaction with defendants throughout the loan modification application process was routine rather than remarkable. Because plaintiff has failed to plead plausible facts that a duty existed between plaintiff borrower and his defendant lenders, his negligence claim fails as a matter of law. We therefore dismiss claim five.

**IV.**

Finally, we address plaintiff's fourth claim alleging intentional infliction of emotional distress (IIED). Plaintiff alleges that defendants' intentional delay of the loan modification application process, the rejection of his application four days after foreclosure on his home and five months after the application process started, and defendants' refusal to honor their obligations in the settlement agreement is extreme and outrageous conduct that resulted in severe emotional distress. Defendant moves to dismiss the IIED claim either for failure to state a claim or as barred by the economic loss doctrine.

In order for a party to prevail on an IIED claim in Arizona, the conduct complained of must be extreme and outrageous. Watts v. Golden Age Nursing Home, 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980). Conduct must be "so extreme in degree," and so beyond boundaries of decency, that it is considered "atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (1965). When considering a motion to dismiss an IIED claim, we may determine whether the alleged actions rise to this level. Cervantes v. Countrywide Home Loans, Inc., ___ F.3d ___, No. 09-17364, 2011 WL 3911031, at *9 (9th Cir. Sept. 7, 2011).

The Ninth Circuit in Cervantes considered a claim that defendants committed IIED by targeting vulnerable homeowner plaintiffs for loans that defendants knew plaintiffs could

not afford. Id. The court upheld the district court's dismissal of the claim, noting that the alleged conduct, even if offensive, was "not inherently 'extreme and outrageous'." Id. Similarly, intentional delay of a loan modification application for five months, foreclosure on a home for which plaintiff was in default, rejection of a loan modification application, and breaching a contractual provision, although arguably offensive, is not utterly intolerable and beyond all bounds of decency. We dismiss claim four, and as such do not consider defendant's alternative argument that the IIED claim is barred by the economic loss doctrine.

**V.**

**THEREFORE, IT IS ORDERED GRANTING** defendants' motion to dismiss claims one, two, four, five, and six (doc. 33).

DATED this 13th day of September, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge