**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Wilson, ) | CV 11-00546-PHX-FJM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| GMAC Mortgage LLC; Homecomings ) Financial LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The court has before it defendants' motion for summary judgment ("MSJ") (doc. 57) and separate statement of facts ("DSOF") (doc. 58), plaintiff's response (doc. 68), plaintiff's response to DSOF ("PSOF") and statement of controverted facts ("PSOCF") (doc. 69), and defendants' reply (doc. 72). In addition, we have before us defendants' motion to strike the declaration of Michael Wilson attached to plaintiff's statement of facts (doc. 71). Finally, we have defendants' motion to strike the new declaration of Michael Wilson (doc. 74).

**I. Background**

On a motion for summary judgment we accept undisputed facts as true and review disputed facts in the light most favorable to the non-moving party. Anthoine v. N. Cent. Cntys. Consortium, 605 F.3d 740, 745 (9th Cir. 2010).

On October 23, 2006, plaintiff obtained a $1,365,000 loan to purchase a house in Carefree, Arizona. He signed a Note promising to repay the loan, which was secured by a

1  Deed of Trust. Homecomings Financial ("Homecomings") was neither a holder of the note
2  nor a beneficiary under the Deed of Trust.

3  Sometime in 2009, plaintiff defaulted on his loan. On August 14, 2009, a Notice of
4  Trustee's Sale was recorded. Plaintiff applied for a loan modification under the HAMP
5  program, which was rejected by GMAC in March 2010. Plaintiff's home was ultimately sold
6  to GMAC at public auction on March 29, 2010 for $787,500. At the time of sale, plaintiff's
7  loan had been accelerated and he owed the original principal balance of $1,365,000.
8  Consequently, after the sale plaintiff still owed GMAC a deficiency of $577,500, plus
9  interest, penalties, and fees owed under the terms of the Note.

10  GMAC sent a letter to plaintiff on April 16, 2010. It agreed to reinstate the lien on
11  the home for the original amount of $1,365,000 if a signed settlement agreement ("the
12  Agreement"), all required documents for reinstatement, and $45,271.51 were received by
13  April 29, 2010. The $45,271.51 consisted of almost $43,000 in payments, as well as accrued
14  late charges, accrued fees, and suspense. The Agreement stated that plaintiff would agree
15  to "[r]eaffirm the subject loan and enter into a loan modification with GMAC[] the terms of
16  which are attached hereto as Exhibit A." GMAC promised to "[r]eaffirm the subject loan and
17  enter into a loan modification. . . the terms of which are attached hereto as Exhibit A," and
18  would "[r]estore title to the Subject Property to [plaintiff]." DSOF, ex. G. Homecomings
19  was not a party to this settlement. It is undisputed that an "Exhibit A" was never attached to
20  the Agreement, and that the Agreement did not contain any other language referencing or
21  describing the loan modification.

22  Plaintiff executed the Agreement on April 28, 2010. That same day, he made out a
23  check to GMAC for $45,271.51. The foreclosure sale was rescinded, the Deed of Trust was
24  reinstated, and the loan and Note were reaffirmed on April 29, 2010. Plaintiff resumed
25  making monthly payments on his loan. GMAC has not provided a loan modification.

26  Plaintiff's first amended complaint ("the FAC") asserted seven claims for relief (doc.
27  27). We granted defendants' partial motion to dismiss in September 2011 (doc. 44). Two
28  claims remain: (1) breach of contract; and (2) unjust enrichment. Defendants move for

- 2 -

1  summary judgment on both claims.

## II. Motions to Strike Plaintiff's Declarations

Plaintiff's response to the MSJ included a declaration from plaintiff dated December 29, 2011. See PSOF, ex. 2. Defendants move to strike the declaration, arguing that it is inadmissible. A party may submit an unsworn declaration provided that it is subscribed "as true under penalty of perjury." 28 U.S.C. § 1746; see also United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (unsworn declaration admissible if it complies with § 1746). The declaration plaintiff submitted with his response fails to comply with § 1746, because it is not signed under penalty of perjury. Accordingly, the December declaration is inadmissible.

Two days after summary judgment briefing closed and defendants filed their first motion to strike, plaintiff submitted a second declaration (doc. 73). The declaration is substantially the same as the first, except that plaintiff declares under penalty of perjury that the declaration is correct. This new declaration is dated January 9, 2012. Defendants move to strike the new declaration, arguing that it is inadmissible under the sham affidavit doctrine and untimely.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). This is because a party should not be allowed to "manufacture a bogus dispute with himself to defeat summary judgment." Nelson v. City of Davis, 571 F.3d 924, 928 (9th Cir. 2009) (emphasis in original). A declaration should not, however, be automatically struck because a discrepancy exists. Rather, the court must decide whether the declaration is a sham or simply a clarification, explanation of deposition testimony, or an honest mistake. Kennedy, 952 F.2d at 266-67. "[T]he inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998-99 (9th Cir. 2009).

Plaintiff was asked about his recollection of events surrounding the Agreement's reference to a loan modification during his October 2011 deposition. When asked to describe

1  the terms of the loan modification to the best of his recollection, plaintiff responded "[a]s far
2  as I know, I was supposed to - I was under the assumption that I was entering into a loan
3  modification, a fixed loan modification, maybe a 30-year fixed loan modification. That's
4  what I thought I was entering into." DSOF, ex. C, Wilson Dep. 37:17-37:21. When asked
5  what that assumption was based on, plaintiff testified that it was based "[o]n what I was told,"
6  and indicated that he was told this "[b]y my attorney." Wilson Dep. 37:23-38:3. Plaintiff
7  also denied recalling any specific promises made to him by either defendant:

> Q. . . . Do you recall any specific promises that were made to you by anyone at GMAC Mortgage?
>
> A. No.
>
> Q. Do you recall any specific promises that were made to you by Homecomings Financial?
>
> A. No.

Wilson Dep. 67:7-67:13.

   In his January declaration, plaintiff offers more detail about the terms of the loan modification and when this modification would be finalized. Plaintiff states that "Exhibit A to the Settlement Agreement was supposed to be created by GMAC after its loan mitigation officers ran the numbers and established exactly what a standard loan modification would be for me." Decl. of Michael Wilson, ¶ 5. Plaintiff also indicates how he came to this understanding:

> I knew when I signed the Settlement Agreement that the specific loan terms in the loan modification would not be spelled out until GMAC processed the numbers according to standard guidelines. Exhibit A would come from that process. I was willing to sign the agreement before Exhibit A was produced because I knew, and GMAC represented to me through counsel, that it would provide me a standard, reasonable loan modification in good faith.

Id. ¶ 8 (emphasis added). The additional detail plaintiff provides about the loan modification being based on "standard guidelines" is an elaboration of plaintiff's deposition testimony, not a contradiction. More questionable, however, is plaintiff's understanding that Exhibit A would be created after the Agreement was signed. On the one hand, this statement can be seen to contradict plaintiff's deposition testimony that his assumptions about the loan

- 4 -

1  modification came from his attorney. On the other hand, if plaintiff's understanding that
2  Exhibit A would be created later came from representations by GMAC that were relayed to
3  him by his <u>own</u> counsel, then the declaration elaborates on his prior testimony that he made
4  assumptions about the loan modification based on what his attorney told him. And failure
5  to recall any promises made by GMAC at the time of the deposition is (although perhaps
6  suspicious) not directly contradictory to a later recollection. Thus, the January declaration
7  should not be disregarded under the sham affidavit rule.
8        This new declaration, however, was filed after summary judgment briefing closed and
9  more than two weeks after plaintiff's deadline for filing the response to the MSJ. <u>See</u> LRCiv
10  56.1(d) (providing thirty days to respond to an MSJ). Rule 6(b)(1), Fed. R. Civ. P. addresses
11  the process for late filings: "the court may, for good cause, extend the time:. . . (B) on motion
12  made after the time has expired if the party failed to act because of excusable neglect." Here,
13  plaintiff submitted the new declaration on his own, without filing a motion, labeling it "*nunc
14  pro tunc*." The decision whether to admit late-filed evidence submitted without a motion is
15  evaluated for abuse of discretion. <u>Fleischer Studios, Inc. v. A.V.E.L.A., Inc.</u>, 654 F.3d 958,
16  966 (9th Cir. 2011). Defendants argue that plaintiff has not even attempted to justify the late
17  filing. But we can reasonably infer that the omission of the perjury language in the timely-
18  filed December declaration was most likely due to excusable neglect. The only change in
19  the January declaration is the inclusion of the perjury language missing from the original
20  document. This language cured the December declaration's defects, but did not alter its
21  factual content. Defendants have not alleged that they have been prejudiced by the late
22  declaration. Indeed, it is difficult to see how they would be, given that the new declaration
23  is substantively the same.
24        Accordingly, we will not consider plaintiff's December declaration because it fails to
25  comply with 28 U.S.C. § 1746. It is not necessary, however, to strike this declaration from
26  the record. We will consider plaintiff's January declaration (doc. 73) despite its untimeliness,
27  as its only change is to add additional language required by § 1746. Defendants' motions to
28  strike are denied.

### III. Breach of Contract

Plaintiff claims that defendants breached the Agreement by failing to provide a loan modification as promised.[1] In Arizona, an enforceable contract requires "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." Savoca Masonry Co., Inc. v. Homes & Son Constr. Co., Inc., 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975). It is undisputed that Homecomings is not a party to the Agreement. Homecomings cannot breach a contract that it did not enter. Summary judgment is granted to Homecomings on the breach of contract claim.

There is no dispute that GMAC and plaintiff are listed as parties to the Agreement, which promises that GMAC shall "enter into a loan modification" with plaintiff. DSOF, ex. G at 2. Nevertheless, GMAC argues that the Agreement is not an enforceable contract. First, GMAC argues that the Agreement lacks consideration because plaintiff was already obligated under the terms of the Note to pay GMAC the $45,271.51. Thus, GMAC argues that plaintiff's payment of the money in connection with the Agreement is not consideration, because plaintiff had a pre-existing duty to pay. See Hisel v. Upchurch, 797 F. Supp. 1509, 1521 (D. Ariz. 1992) (performing a pre-existing duty is not consideration); Restatement (Second) of Contracts § 73 (1981) (same). But plaintiff promises to do more than pay money. He also promises to "[r]eaffirm the subject loan," "enter into a loan modification," and "[r]elease GMAC[]" from claims relating to "the Property, Foreclosure Sale, Loan, and/or the servicing or administration of such Loan."[2] DSOF, ex. G at 2. An agreement not to prosecute a valid legal claim is consideration. See Restatement (Second) of Contracts § 74; see also Carroll v. Lee, 148 Ariz. 10, 13, 712 P.2d 923, 926 (1986) (defining

---

[1] The Agreement states that it shall be construed according to Texas law. Defendants cite Arizona law in their briefs. Plaintiff concedes that Arizona law may be applied for the purposes of this motion to obviate the need for a conflicts of law analysis.

[2] GMAC complains that this argument goes outside plaintiff's allegations in his amended complaint, but the recitations referred to by plaintiff are expressly included in the Agreement, which was attached as an exhibit to the FAC. FAC, ex. C.

1 consideration as any bargained-for performance, noting that "courts do not ordinarily inquire
2 into the adequacy of consideration").  That GMAC has not actually tried to enforce this
3 portion of the Agreement is irrelevant. Plaintiff expressly agreed in the Agreement to release
4 GMAC from all claims relating to the foreclosure sale and his loan in exchange for, among
5 other things, receiving a loan modification.  The Agreement is supported by valid
6 consideration.[3]

7 We next address GMAC's argument that the Agreement is unenforceable because it
8 violates the statute of frauds.  GMAC argues, and plaintiff does not dispute, that a loan
9 modification agreement which operates to modify the original loan falls within the statute of
10 frauds.  See A.R.S. § 44-101 (agreements concerning an interest in real property fall within
11 the statute of frauds); Best v. Edwards, 217 Ariz. 497, 502, 176 P.3d 695, 700 (Ct. App.
12 2008) (agreement to modify a material term of a contract within the statute of frauds must
13 also be in writing).  In order to be enforceable, a contract that falls within the statute of frauds
14 must be in writing, must be signed by the party to be charged, and must state "with
15 reasonable certainty the essential terms of the unperformed promises in the contract."
16 Restatement (Second) of Contracts § 131(c); see also Western Chance No. 2, Inc. v. KFC
17 Corp., 957 F.2d 1538, 1542 (9th Cir. 1992) (in Arizona, a writing must state the essential
18 terms "with reasonable certainty" to satisfy the statute of frauds).

19 Here, although the promise to enter into a loan modification is in writing and the
20 Agreement is signed by GMAC, it is undisputed that there are no written terms concerning
21 the loan modification.  This is because Exhibit A was never attached, and the remainder of
22 the Agreement is silent as to the loan modification.  Plaintiff offers evidence that a loan
23 modification is a standard item always issued by GMAC according to specific guidelines.
24 PSOCF ¶ 5. According to plaintiff, Exhibit A was going to be created after GMAC "ran the
25 numbers" and determined what a standard loan modification would be for plaintiff.  PSOCF

---

[3] Accordingly, we do not reach plaintiff's alternative argument that promissory estoppel applies.

- 7 -

1  ¶ 19. But evidence concerning the subsequent creation of Exhibit A and its terms does not
2  create an issue of material fact. It is inadmissible. This is because parties cannot, "under the
3  guise that the contract is ambiguous, resort to the use of parol evidence to construct the terms
4  of an [] agreement relating to real property which agreement is required by the Statute of
5  Frauds to be in writing." Lyon v. Big Bend Dev. Co., 7 Ariz. App. 1, 4, 435 P.2d 732, 735
6  (Ct. App. 1968).

7  Plaintiff does not argue that any defenses to the statute of frauds apply. Even if they
8  do, plaintiff has not shown that an issue of material fact exists as to GMAC's alternative
9  argument that the Agreement omits material terms of the loan modification and is thus
10  unenforceable. It is undisputed that the Agreement does not contain any specifics about the
11  loan modification, instead incorporating the non-existent Exhibit A by reference. Thus, the
12  Agreement itself does not include "sufficient specification of terms so that the obligations
13  involved can be ascertained." Savoca Masonry, 112 Ariz. at 394, 542 P.2d at 819. Plaintiff's
14  evidence of a contemporaneous agreement between GMAC and plaintiff that Exhibit A
15  would "be created after the loan mitigation officers ran the numbers and established exactly
16  what a standard HAMP loan modification would be for [plaintiff]," PSOCF ¶ 19, directly
17  contradicts the Agreement's statement that the terms of the loan modification "are attached
18  hereto as Exhibit A and incorporated herewith." DSOF, ex. G at 2 (emphasis added). This
19  is inadmissible parol evidence. U.S. Fid. & Guar. Co. v. Olds Bros. Lumber Co., 102 Ariz.
20  366, 368, 430 P.2d 128, 130 (1969) (". . . where an agreement is reduced to writing in such
21  terms as to express a complete contract, evidence of a contemporaneous oral agreement
22  relating to the same subject matter, varying, contradicting or enlarging the written agreement,
23  is inadmissible, in the absence of an allegation of fraud or mistake.").

24  Plaintiff alternatively argues that the Agreement is enforceable as either a novation
25  or an accord and satisfaction. Accord and satisfaction is a "method of discharging a
26  contract," where the "parties agree to give and accept something in settlement of the claim
27  or demand of the one against the other, and perform such agreement." Vance v. Hammer,
28  105 Ariz. 317, 319, 464 P.2d 340, 342 (1970) (citation omitted). A novation, on the other

1 hand, requires "[a] previous valid obligation; the agreement of all the parties to the new
2 contract; the extinguishment of the old contract; and the validity of the new one."  Dunbar
3 v. Steiert, 31 Ariz. 403, 404, 253 P. 1113, 1113 (1927). The undisputed facts reveal that the
4 Agreement is neither. This is because the Agreement, by its terms, neither discharged nor
5 extinguished plaintiff's original loan. Instead, it reaffirmed it. Thus, the Agreement is not
6 a novation or an accord and satisfaction.

7 Finally, plaintiff argues that a statement by GMAC's Rule 30(b)(6), Fed. R. Civ. P.
8 deponent that the Agreement constitutes a final and binding agreement is dispositive.
9 Plaintiff is mistaken. The question of whether the Agreement is an enforceable contract is
10 one of law. Any witness testimony that purports to establish the legal existence of the
11 Agreement is an inadmissible legal conclusion. See Aguilar v. Int'l Longshoremen's Union
12 Local #10, 966 F.2d 443, 447 (9th Cir. 1992).

13 In sum, GMAC's promise to provide a loan modification is unenforceable, either
14 because it violates the statute of frauds or because it fails to sufficiently specify the loan
15 modification's terms. Summary judgment is granted to GMAC on the breach of contract
16 claim.

### IV. Unjust Enrichment

18 Plaintiff contends that defendants have been unjustly enriched by the $45,271.51 he
19 paid in connection with the Agreement and the reinstatement of his $1,365,000 loan when
20 defendants failed to provide a loan modification as promised. To be granted the equitable
21 remedy of  restitution, plaintiff must show (1) an enrichment, (2) an impoverishment, (3) a
22 connection between them, (4) "the absence of justification for the enrichment and
23 impoverishment" and (5) the absence of a remedy at law. Freeman v. Sorchych, 226 Ariz.
24 242, ¶ 27, 245 P.3d 927, 936 (Ct. App. 2011); see also Murdock-Bryant Constr., Inc. v.
25 Pearson, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985). Unjust enrichment is not available
26 where a contract specifically governs the parties and the plaintiff receives the benefit of his
27 bargain. Brooks v. Valley Nat'l Bank, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976).
28 Homecomings argues that plaintiff is not entitled to unjust enrichment as a matter of

- 9 -

1 law because it is not a party to the Agreement and did not receive the money paid by
2 plaintiff. To support this argument, Homecomings points to the check, which is made out
3 to GMAC. Plaintiff responds that the check does not prove that Homecomings never
4 received any of this payment. PSOF ¶ 15. However, plaintiff offers no evidence to suggest
5 that Homecomings ever received or benefitted from his payment to GMAC. There is no
6 dispute of material fact as to whether Homecomings was unjustly enriched, because there is
7 no evidence suggesting that Homecomings ever received plaintiff's money. Summary
8 judgment is granted to Homecomings on the unjust enrichment claim.

9 GMAC argues that there is a specific contract governing the parties. According to
10 GMAC, plaintiff paid the $45,271.51 as money owed to GMAC under the terms of the
11 original Note. Because GMAC loaned plaintiff $1,365,000, it argues that plaintiff already
12 received the benefit of his bargain and unjust enrichment is unavailable. Plaintiff argues that
13 he paid the money to GMAC solely in connection with the Agreement. He claims that he
14 never received the benefit of his bargain, because GMAC still has not provided him with a
15 loan modification. Plaintiff argues that GMAC was enriched, and he was impoverished, by
16 his payment.

17 Even assuming that plaintiff paid the $45,271.51 under the Agreement and assuming
18 that this payment can be considered an impoverishment when it allowed him to rescind a
19 foreclosure sale and retake possession of his million-dollar home, there still needs to be an
20 absence of a justification for plaintiff's impoverishment and GMAC's enrichment for unjust
21 enrichment to be awarded. But it is undisputed that the original Note remained a valid
22 contract under which plaintiff was legally required to repay the money that he borrowed to
23 purchase his home. It is also undisputed that after the foreclosure sale plaintiff owed GMAC
24 the deficiency of $577,500 plus all accrued interest, penalties, and fees. Thus, the undisputed
25 facts show the existence of a justification for plaintiff's payment to GMAC. Indeed, if the
26 Agreement had never existed, plaintiff would have owed GMAC more than ten times the
27 $45,271.51 actually tendered. Accordingly, there is no genuine dispute of material fact as
28 to whether there is a justification for plaintiff's payment to GMAC. GMAC is entitled to

summary judgment on the unjust enrichment claim.

## V. Conclusion

**IT IS ORDERED DENYING** defendants' motion to strike (doc. 71).

**IT IS ORDERED DENYING** defendants' motion to strike (doc. 74).

**IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 57).

The Clerk shall enter judgment.

DATED this 8th day of March, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge